UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GARY CHAMBERS,

Petitioner,

v.

9:23-CV-0931
(DNH/ML)

STEPHEN BRANDOW, Superintendent
of Hudson Corr. Facility,

Respondent.

---

APPEARANCES: OF COUNSEL:

OFFICE OF BRUCE E. KNOLL
Counsel for Petitioner
Post Office Box 2072
Empire State Plaza
Albany, New York 12203

BRUCE E. KNOLL, ESQ.

LETITIA A. JAMES
New York State Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

JAMES F. GIBBONS, ESQ.
Assistant Attorney General

MIROSLAV LOVRIC, United States Magistrate Judge

**REPORT and RECOMMENDATION**

Currently before the Court in this habeas corpus proceeding filed by the petitioner, Gary Chambers ("Petitioner"), pursuant to 28 U.S.C. § 2254, is a referral to the undersigned for a report and recommendation from Senior United States District Court Judge David N. Hurd regarding the Petition. (Dkt. No. 1.) Petitioner is challenging a judgment of conviction in Albany County Court. (Dkt. No. 1 at 1.)

On August 1, 2023, Petitioner filed a counseled Petition seeking a writ of habeas corpus challenging his confinement. (Dkt. No. 1.) Respondent Stephen Brandow ("Respondent") opposed that motion and Petitioner filed a traverse. (Dkt. No. 14, Attach. 1; Dkt. No. 20.) For the following reasons, the undersigned recommends that the Petition be denied.

## I. BACKGROUND

On March 17, 2015, an Albany County grand jury handed up a 75-count indictment against Petitioner and 13 co-defendants, including Latasha Gause ("Ms. Gause"), related to a drug distribution conspiracy. (State Record ["SR."] at 1-41, 1734.)

Petitioner's indictment was assigned to the Honorable Peter A. Lynch ("trial judge") and Petitioner was represented by defense counsel Bryan E. Rounds ("trial counsel"). (SR. at 1734.)

Ms. Gause pleaded guilty pursuant to a cooperation agreement, which obliged her to testify truthfully against Petitioner. (SR. at 521.) In a pre-trial interview, Ms. Gause informed the prosecutor that she would be uncomfortable being cross-examined by trial counsel because he had represented her before an unrelated grand jury in 2004, investigating the murder of a police informant. (*Id.*)

The People requested a hearing pursuant to *People v. Lombardo*, 61 N.Y.2d 97 (N.Y. 1984), to determine whether trial counsel had a conflict of interest based on this alleged prior professional interaction with Ms. Gause. (SR. at 348-49.) At an appearance before the trial court on December 2, 2015—which Petitioner attended with trial counsel—the prosecutor stated that he did not believe the facts supported a finding that trial counsel should be disqualified. (Dkt. No. 13, Attach. 1 at 64-65.) Trial counsel indicated that (1) he had represented Ms. Gause's boyfriend "or an associate of hers of some type" at a trial approximately 15 years earlier, (2) to the best of his recollection, he had never appeared in court or before a tribunal as

Ms. Gause's attorney, (3) approximately 10 years earlier, the State was looking for Ms. Gause as a witness in a criminal matter being prosecuted by a special prosecutor and (a) trial counsel went to the Troy Police Department at Ms. Gause's request because her children had been taken into custody despite being in the company of an adult baby-sitter, and (b) the special prosecutor contacted trial counsel asked him to make contact with Ms. Gause, and (4) he and Petitioner talked about trial counsel's prior interactions with Ms. Gause and Petitioner was aware of the interactions before he hired trial counsel. (Dkt. No. 13, Attach. 1 at 67-70.) The trial court determined that it did not see any reason why trial counsel could not properly represent Petitioner and engage in meaningful cross-examination of Ms. Gause. (*Id*. at 70.)

On December 17, 2015, the parties appeared before the trial court again after the People provided a *Brady* notice disclosing that Ms. Gause stated that at some point in the past, she told trial counsel that she made an unspecified false statement in 2004 while testifying before a Rensselaer County grand jury investigating the unrelated murder of a police informant. (SR. at 392; Dkt. No. 13, Attach. 3 at 2.) Trial counsel presented that (1) to the best of his recollection, he was never Ms. Gause's attorney and never had any conversations with her in the context of an attorney/potential client relationship that would otherwise be privileged, (2) he represented another individual at trial and Ms. Gause was the girlfriend or common law wife or wife of that person, (3) he received a phone call from Ms. Gause who stated that she believed the Troy Police had her children and their baby-sitter at the police station and when trial counsel went to the police station, the police agreed to release the children to their aunt, (4) the special prosecutor contacted trial counsel to ask trial counsel if he could get ahold of Ms. Gause because the State wanted to meet with her as a witness in a matter. (Dkt. No. 13, Attach. 1 at 5-6.) Trial counsel clarified that he did not accompany Ms. Gause to the grand jury or appear at the courthouse with

her before going into the grand jury. (*Id*. at 7.) Further, trial counsel stated that "[a]s far as what she says she disclosed to me in 2004, I had absolutely no recollection of it" and that his "knowledge of it is what [the prosecutor] disclosed." (*Id*.)

Trial counsel stated that he believed he could still ask Ms. Gause on cross-examination whether she told the prosecutor that she lied to the grand jury in 2004, but not whether she told trial counsel that she had lied to the grand jury in 2004. (Dkt. No. 13, Attach. 3 at 8-9.) Trial counsel informed the trial court that he discussed this with Petitioner. (*Id*. at 9-10.) The trial court then addressed Petitioner who stated that he wanted to continue to be represented by trial counsel. (*Id*. at 10.)

The trial court determined that there was a potential conflict of interest but that Petitioner had the right to counsel of his choice and there was no basis to remove trial counsel. (Dkt. No. 13, Attach. 3 at 10-11.)

After a trial, on March 1, 2016, Petitioner was convicted of conspiracy in the second degree, criminal sale of a controlled substance in the first degree (two counts), criminal sale of a controlled substance in the second degree (two counts), and criminal possession of a controlled substance in the third degree. (SR. at 201); *People v. Chambers*, 185 A.D.3d 1141, 1141 (N.Y. App. Div. 3d Dep't 2020). On May 5, 2016, Petitioner was sentenced to concurrent prison terms of three-and-one-half to ten years for the conviction of conspiracy in the second degree, fifteen years with five years post-release supervision for each conviction of criminal sale of a controlled substance in the first and second degrees, and nine years with two years post-release supervision for the conviction of criminal possession of a controlled substance in the third degree. (SR. at 201); *Chambers*, 185 A.D.3d at 1143.

On appeal, the New York Appellate Division Third Department modified the sentence by vacating the sentences imposed for each conviction of criminal sale of a controlled substance in the second degree (fifteen years in prison, followed by five years post-release supervision), and remitted for resentencing. *Chambers*, 185 A.D.3d at 1146-47.

On February 9, 2021, the New York Court of Appeals denied leave to appeal. *People v. Chambers*, 36 N.Y.3d 1055 (N.Y. 2021); *People v. Chambers*, 36 N.Y.3d 1056 (N.Y. 2021).

On April 12, 2022, Petitioner filed a counseled motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10, claiming that, among other things,: (1) trial counsel had a conflict of interest, predicated on his alleged prior representation of cooperating witness Ms. Gause in an unrelated matter, (2) he was deprived of a fair trial by the People's failure to make various disclosures[1] that allegedly would have tended to impeach Ms. Gause, and (3) he was deprived of a fair trial by the trial judge's failure to recuse himself *sua sponte* on the basis that, ten years earlier, the trial judge was defense counsel—to an individual named Lance Booker—in the unrelated homicide of the police informant and Ms. Gause testified before the grand jury in that matter. (SR. at 190-256.)

---

[1] More specifically, Petitioner argued that the People failed to disclose: (1) the details—the lie and the purpose of the grand jury—of Ms. Gause's 2004 grand jury testimony, (2) a transcript from Ms. Gause's 2004 grand jury testimony, (3) a statement by Ms. Gause dated February 19, 2004, where she admitted to selling a gun to Mr. Booker and another individual and previously lying to the police, (4) a police report from February 12, 2004, wherein Ms. Gause lied about not recognizing Mr. Booker and another individual, (5) any non-prosecution agreement between Ms. Gause and the People related to her sale of a handgun to Mr. Booker and another individual, (6) any non-prosecution agreement between Ms. Gause and the People related to her admitted perjury before the grand jury in 2004, and (7) Ms. Gause's complete criminal history report, which should have included a violation for public urination and any other criminal activities that Ms. Gause was involved in and the People were aware of or should have been aware of. (SR. 240-247.)

The trial judge recused himself from handling Petitioner's motion pursuant to N.Y. Crim. Proc. Law § 440.10 and submitted a letter stating that he did not recall that Ms. Gause was a potential witness in *People v. Lance Booker*. (SR. at 1746.)

On April 14, 2023, the Honorable Andrea Ackerman of Albany County Court (the "motion court") denied Petitioner's motion pursuant to N.Y. Crim. Proc. Law § 440.10. (SR. 1732-48.)

More specifically, with respect to Petitioner's ineffective assistance of counsel claim, the motion court held that although Petitioner submitted an affidavit from Ms. Gause in support of his motion, her affidavit made the same allegations—albeit in further detail—as was twice addressed on the record by the trial judge. (SR. at 1739.) Further, the motion court held to the extent Petitioner challenged the adequacy of the trial court's inquiries into the alleged conflict, that is a record-based claim, which is barred pursuant to N.Y. Crim. Proc. Law § 440.10. (SR. at 1739.) Moreover, the motion court held that Petitioner's motion relied on his own and Ms. Gause's affidavits, which largely mimicked the allegations presented to the trial court and Petitioner waived any conflict and elected to keep trial counsel as his attorney. (SR. 1740-41.) Further the motion court denied Petitioner's claim to the extent that it asserted that the conflict affected the defense because the record did not support that argument. (SR. 1741-42.)

The motion court rejected Petitioner's *Brady* claims related to the prosecution. (SR. 1742-46.) More specifically, the motion court held that Petitioner's claim that the prosecution failed to disclose information regarding Ms. Gause's false testimony and details in the 2004 unrelated homicide prosecution, was procedurally barred pursuant to N.Y. Crim. Proc. Law § 440.10(3)(a). (SR. 1744.) In the alternative, the motion court rejected Petitioner's claim that the prosecutor violated *Brady* by failing to disclose the details or transcript of Ms. Gause's 2004

grand jury testimony because (1) Petitioner failed to provide proof that it was possessed by the People, (2) the transcript and details are not considered *Brady* material because Petitioner had knowledge of them during the trial, and (3) in any event, there is no reasonable probability that the result of the trial would have been different if the transcript and details had been turned over. (SR. 1744-45.) With respect to an investigation statement of February 12, 2004, and a statement of February 19, 2004, the motion court held that (1) Petitioner's claim that the People possessed these materials is entirely speculative, and (2) there is no reasonable probability that had the People disclosed these materials, the outcome of the trial would have been different. (*Id*. at 1745.) With respect to Ms. Gause's non-prosecution for the gun sale in 2004 and perjury for her 2004 grand jury testimony, the motion court held that because Petitioner has offered no proof to substantiate his allegations that there may have been a non-prosecution agreement, the People's disclosure of Ms. Gause's criminal history report was sufficient to meet their *Brady* obligations. (*Id*.) With respect to Petitioner's claim that the People failed to turn over Ms. Gause's complete criminal history, the motion court held that (1) even if (a) public urination citation was classified impeaching in nature, and (b) Petitioner provided any proof that the People had knowledge of Ms. Gause's citation for it, the disclosure of that evidence would not have changed the result of the trial; and (2) Petitioner failed to provide support for his allegations that Ms. Gause engaged in other criminal activities and the People were aware or must have been aware of those activities. (*Id*. at 1745-46.)

Further, the motion court rejected Petitioner's claim that the trial court had a conflict of interest that required recusal. (SR. 1746-48.) The motion court found that there were no grounds for the trial judge to be disqualified under Section 14 of the Judiciary Law. (SR. at 1747.) The motion court noted that the trial judge represented Mr. Booker in a completely

unrelated homicide case, a decade before Petitioner's criminal action, where Ms. Gause testified at the grand jury stage and was never cross-examined during the trial. (*Id.*) The motion court found the trial judge's "connection [to Ms. Gause wa]s so remote and disconnected that it cannot [be] reasonably argued that there was any kind of direct, personal, substantial or pecuniary interest on the part of the trial judge—or any kind of clash in his judicial role." (SR. 1747.) Hence, the motion court found that Petitioner failed to provide evidence to support his claim that the trial judge was biased against him, that the trial judge was otherwise required to recuse himself, or anything that occurred during the trial to support his arguments. (*Id.* at 1747-48.) The motion court held that the trial judge's weak and distant connection to Ms. Gause did not even create the appearance of impropriety. (*Id.* at 1748.)

Petitioner filed a counsel application for leave to appeal where he argued (1) that trial counsel was ineffective due to a conflict of interest, (2) trial counsel was ineffective with regard to the swearing in of venirepersons, (3) trial counsel was ineffective with regard to a motion to suppress eavesdropping evidence, (4) the prosecution violated *Brady*, and (5) the trial court should have recused on the basis that its participation in the unrelated 2004 homicide matter created an appearance of impropriety. (SR. 1750-70.)

On June 1, 2023, the Appellate Division denied leave to appeal. (SR. 1780.)

## II. GROUNDS RAISED

### A. Petition

On August 1, 2023, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus. (Dkt. No. 1.) The Petition asserts the following three grounds for habeas relief: (1) Petitioner's Sixth Amendment right to effective assistance of counsel was violated by trial counsel's prior representation of a cooperating and testifying co-defendant (Ms.

Gause) ("Ground 1"); (2) Petitioner's Fifth Amendment due process and fair trial rights were violated by the State's failure to provide *Brady* and *Giglio* material[2] to the defense that was in its constructive possession ("Ground 2"); and (3) Petitioner's Fifth and Fourteenth Amendment rights to fundamental fairness, a fair trial, and due process of law were violated by the trial judge's failure to disclose *Brady* and *Giglio* material known to him regarding a principal witness (Ms. Gause) against Petitioner ("Ground 3"). (*See generally* Dkt. No. 1.)

**B. Respondent's Answer and Memorandum of Law**

Generally, Respondent makes the following four arguments in support of his answer: (1) the motion court's rejection of Petitioner's Sixth Amendment claim was not unreasonable; (2) Petitioner's *Brady* claim is partially procedurally barred and wholly meritless; (3) Petitioner's challenge to the trial judge's alleged *Brady* violation is procedurally barred and meritless; and (4) Petitioner is not entitled to relief on the basis that the motion court did not grant an evidentiary hearing. (*See generally* Dkt. No. 14, Attach. 1.)

More specifically, with respect to his first argument (addressing Ground 1), Respondent asserts that Petitioner failed to show a violation of his Sixth Amendment because his trial counsel's performance was reasonable, Petitioner's criticisms of the cross-examination of Ms. Gause went only to counsel's strategy, and Petitioner failed to show that a different strategy would have resulted in a different verdict. (Dkt. No. 14, Attach. 1 at 17-23.) Moreover,

---

2 Petitioner asserts that the prosecutor failed to disclose the following *Brady* materials: (1) "oral details and specifics of [Ms.] Gause's testimony before the Rensselaer County grand jury"; (2) a transcript of Ms. Gause's grand jury testimony; (3) a statement of February 19, 2004, from Ms. Gause, admitting to selling a gun to the individuals who killed a police informant and lying to the police; (4) an Investigative Report of February 12, 2004, indicating that Ms. Gause lied when she denied recognizing the individuals who killed the police informant; (5) the reason for the non-prosecution of Ms. Gause for possession and selling the gun and for the perjury before the grand jury in 2004; and (6) Ms. Gause's "complete criminal history and information on her prior bad acts." (Dkt. No. 1 at 17-18.)

Respondent argues that the motion court rejected this claim on the merits—holding that Petitioner failed to present material allegations related to the conflict of interest that were not already addressed by the trial judge, that Petitioner waived the alleged conflict, and that trial counsel's performance did not violate Petitioner's constitutional rights—and that determination is entitled to deference on habeas review pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (*Id*. at 17-20.) Respondent asserts that the motion court reasonably found that trial counsel effectively cross-examined witnesses, made appropriate trial objections and motions, made competent opening and closing statements, and secured not guilty verdicts on two counts of the indictments. (*Id.* at 20-27.) Respondent argues that Petitioner's arguments regarding trial counsel's cross-examination should be rejected because the extent and manner of cross-examination fall within the ambit of trial strategy, not ineffectiveness. (*Id*.) Further, Respondent argues that (1) trial counsel asked Ms. Gause about her perjury before the 2004 Rensselaer County grand jury, (2) Petitioner failed to show that trial counsel would have had a good-faith basis to accuse Ms. Gause of participating in the unrelated homicide of a police informant or that trial counsel lacked a reasonable basis for declining to do so, and (3) where the factfinder heard significant impeachment material about a witness, there cannot be a reasonable probability that further impeachment of the same witness's credibility would have altered the verdict. (*Id*.) Respondent argues that a potential conflict of interest is not a basis for habeas relief absent *Strickland* ineffectiveness and Petitioner's assertions that trial counsel failed to appropriately impeach Ms. Gause, rest on speculation. (*Id*.) Finally, Respondent asserts that Petitioner is not entitled to an evidentiary hearing on habeas review and that this Court is limited to the record before the motion court. (*Id*. at 27-28.)

With respect to his second argument (addressing Ground 2), Respondent argues that to the extent Petitioner seeks relief based on the People's alleged failure to disclose the substance of Ms. Gause's 2004 grand jury testimony, the transcript of that testimony, or the reasons why she was not prosecuted for falsely testifying there, his claim is procedurally barred on independent and adequate state grounds pursuant to N.Y. Crim. Proc. Law § 440.10(3)(a). (Dkt. No. 14, Attach. 1 at 28-38.) Further, Respondent argues that Petitioner's *Brady* claims lack merit because (1) the motion court reasonably found that Petitioner failed to prove that the prosecution suppressed any of the alleged *Brady* material and that finding is binding, absent clear and convincing evidence to the contrary, which Petitioner has not produced, (2) the motion court did not unreasonably apply clearly-established Supreme Court caselaw in holding that the prosecutor did not constructively possess the alleged *Brady* material, (3) Petitioner cannot show that the prosecutor suppressed Ms. Gause's 2004 testimony because Petitioner knew about the testimony and could have acquired a transcript of his own, (4) with respect to Ms. Gause's criminal history report and alleged prior bad acts, Petitioner failed to allege or prove that the prosecutor had actual possession of information that the criminal history report was incomplete or that Ms. Gause engaged in other criminal activity, and (5) Petitioner failed to present any evidence to support his speculation that Ms. Gause must have had a non-prosecution agreement for her 2004 gun sale or perjury. (*Id.*) Finally, Respondent argues that Petitioner cannot show that the alleged *Brady* evidence was material because the alleged evidence was merely an additional basis on which to impeach Ms. Gause, whose credibility was already shown to be questionable. (*Id.*)

With respect to his third argument (addressing Ground 3), Respondent argues that Petitioner failed to properly exhaust this claim and it is now defaulted. (Dkt. No. 14, Attach. 1 at 38-43.) Further, Respondent argues that the claim is meritless because the Supreme Court has

never clearly established that the Due Process Clause requires a trial court to disclose extrajudicial information to a party, and in any event, the motion court here found that Petitioner failed to prove either that the trial judge possessed relevant extrajudicial information or that disclosure of that information would have had an effect on the verdict. (*Id.*)

With respect to his fourth argument, Respondent asserts that to the extent that Petitioner seeks an evidentiary hearing or substantive relief on the basis that the state court was required to conduct an evidentiary hearing before making factual findings or denying his motion on the merits, the claim is not a cognizable basis for federal habeas review. (Dkt. No. 14, Attach. 1 at 43-44.)

**C. Petitioner's Traverse**

Petitioner makes the following three arguments in his Traverse: (1) the state court's rejection of his Sixth Amendment claim was unreasonable; (2) his *Brady/Giglio* claim is meritorious; and (3) the trial judge violated Petitioner's right to a fair trial. (*See generally* Dkt. No. 20.)

More specifically, with respect to his first argument (addressing Ground 1), Petitioner asserts that the motion court's fact-finding determination that trial counsel was not ineffective due to a potential conflict of interest was unreasonable and not entitled to deference. (Dkt. No. 20 at 3-9.) Petitioner asserts that the affidavit from Ms. Gause and his affidavit provided detailed additional material facts related to trial counsel's representation that were not brought out at the *Lombardo* inquiries. (*Id.*) Petitioner asserts that the motion court misapprehended the factual predicate underlying trial counsel's interactions with Ms. Gause, what was presented to the trial court, and what was presented before the motion court. (*Id.*) Petitioner argues that the motion court erred in crediting trial counsel and not crediting Ms. Gause without a hearing especially

where its decision was based on faulty fact-finding. (*Id.*) Petitioner asserts that, contrary to Respondent's representations, the state court found that there was a potential conflict of interest and that trial counsel represented Ms. Gause. (*Id.*) Further, Petitioner argues that trial counsel was either (1) dissembling with the trial court, or (2) his memory was so bad as to lack credibility and the trial court should not have relied on his denial of a recollection in the face of Ms. Gause's affirmative assertions. (*Id.*) Petitioner argues that trial counsel's conflict of interest caused his conduct to fall below an objective standard of reasonableness during his inadequate cross-examination of Ms. Gause. (*Id.*)

With respect to his second argument (addressing Ground 2), Petitioner argues that the motion court erred in holding that N.Y. Crim. Proc. Law § 440.10(3)(a) precluded relief with respect to the 2004 grand jury *Brady* claim because he failed to raise it with the trial court before the verdict or sentencing. (Dkt. No. 20 at 9-17.) Petitioner argues that he was entitled to rely on the *Brady* notices of the People and their continuing duty to disclose *Brady* material, and there was a conversation between trial counsel and the prosecutor, "which may have misled [trial counsel] that he received all the *Brady/Giglio* material." (*Id.*) Petitioner argues that his ineffective assistance of counsel claim is intertwined with this claim and there was no strategic reason for his trial counsel not to request a transcript or to record his objection to not getting one. (*Id.*) Petitioner argues that the suppression of the *Brady/Giglio* material substantially limited the cross examination of Ms. Gause and in turn, affected the verdict. (*Id.*) Petitioner argues that the People had constructive possession of the *Brady/Giglio* materials and the motion court did not hold otherwise. (*Id.*) Further, Petitioner argues that Ms. Gause lied under oath during the trial and the prosecutor failed to correct her testimony. (*Id.*) Petitioner argues that had the jury been

presented with Ms. Gause's cumulative lies, there is a reasonable probability that the verdict would have been different. (*Id.*)

With respect to his third argument (addressing Ground 3), Petitioner asserts that his claim that the trial judge violated a *Brady* duty is not procedurally defaulted because the issue was presented to the appellate court in his application for leave to appeal which identified the appearance of impropriety in his Point III argument. (Dkt. No. 20 at 17-22.) Petitioner argues that he alerted the Appellate Division of the federal constitutional nature of his claim. (*Id.*) Petitioner argues that he had a due process constitutional right that required the trial judge to step aside when a reasonable judge would find it necessary to do so. (*Id.*) In addition, Petitioner argues that the trial judge erred in not calling Ms. Gause at the *Lombardo* inquiries because doing so would have refreshed his recollection and he would have recused himself. (*Id.*) Further, Petitioner argues that the motion court erred in crediting the trial judge's unsworn statement attesting to a lack of memory, absent a hearing. (*Id.*) Finally, Petitioner argues that even if the trial judge did not remember Ms. Gause, it is irrelevant because the prejudice to Petitioner is the same. (*Id.*)

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Review of Habeas Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the

unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

**B. Legal Standard Governing Ineffective Assistance of Trial Counsel**

For ineffective assistance of counsel claims, federal habeas "review is 'doubly deferential' because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (internal quotation marks and citation omitted).

To prove ineffective assistance of counsel, petitioner must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong requires petitioner to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

**C. Legal Standard Governing Claims Pursuant to *Brady***

To establish violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), "a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was

prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Under these principles, a *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler*, 527 U.S. at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

A petitioner bears the burden of proving that the prosecution withheld material information. *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998). "Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [the petitioner] to relief." *Harris*, 9 F. Supp. 2d at 275 (quotations omitted); *see also Mallet v. Miller*, 432 F. Supp. 2d 366, 378 (S.D.N.Y. 2006) (*Brady* claim dismissed where supported only by conjecture); *Flynn v. Colvin*, 13-CV-1247, 2016 WL 7053582, at *6 (N.D.N.Y. Dec. 5, 2016) (Singleton, J.) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief.") (citation omitted).

## IV. ANALYSIS

### A. Ground 1

After carefully considering the matter, I recommend that Petitioner's claim regarding ineffective assistance of counsel (Ground 1) be denied for the reasons set forth in Respondent's memorandum of law. (Dkt. No. 14, Attach. 1 at 17-28.)

First, the undersigned agrees with Respondent that the motion court's decision was on the merits and AEDPA deference is due to the state court's factual and legal determinations

notwithstanding that the court did not hold a new evidentiary hearing on Petitioner's motion to vacate the judgment. (Dkt. No. 14, Attach. 1 at 17-20.)

Second, the undersigned finds that the state court's determination was not unreasonable. The state court properly found that a potential conflict of interest existed. (SR. at 1741.) However, a potential conflict of interest in not a basis for habeas relief absent *Strickland* ineffectiveness because the Sixth Amendment is not violated by a mere possibility. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978).

Petitioner failed to establish that the potential conflict affected trial counsel's performance. The motion court reasonably held that "trial counsel effectively cross-examined witnesses - bringing out inconsistencies in the proof; made appropriate trial objections and motions; made competent opening and closing statements; and secured 'not guilty' verdicts on two counts of the indictment." (SR. 1741-42.) It is axiomatic that decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and generally will not support an ineffective assistance claim. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).

Contrary to Petitioner's assertion, trial counsel did not "h[o]ld back on extensively cross-examining [Ms.] Gause on her perjurious grand jury testimony because he had previously represented her." (Dkt. No. 1, Attach. 2 at 10; *accord* Dkt. No. 20 at 8.) Indeed, during cross-examination of Ms. Gause, the following exchange occurred:

> Q: And you went into the grand jury testifying for the prosecution and you lied, correct?
>
> A: Yup.

(Dkt. No. 13, Attach. 7 at 912.)

Petitioner argues that trial counsel failed to question Ms. Gause about her alleged role in the murder of a police informant by selling a gun to the killers. (Dkt. No. 1, Attach. 2 at 12.) However, trial counsel did not have a food-faith basis to accuse Ms. Gause of participating in the murder. Petitioner himself is unsure whether the gun that Ms. Gause sold was used in the killing. (*Compare* Dkt. No. 1, Attach. 2 at 10 ["Gause was never prosecuted for possessing or providing the gun that was *likely* used to kill Christopher Drabik." (emphasis added)], *with* Dkt. No. 1, Attach. 2 at 12 [asserting that trial counsel knew about Ms. Gause's "prior bad acts . . . including her . . . selling of a gun that was used in a murder"], *and* Dkt. No. 20 at 7 ["cross-examination should have brought out the facts of [Ms. Gause's] involvement i.e., the provision of the gun used in the murder."].) Moreover, to the extent that Petitioner argues that the cross-examination should have included details regarding Ms. Gause's involvement in the murder for impeachment purposes, Ms. Gause had already been impeached and the undersigned cannot conclude that further cross-examination would have affected the verdict.

Third, I find that the state court reasonably found the affidavits of Ms. Gause and Petitioner "largely mimic[ked]" the allegations made in December 2015 to the trial court. (SR. at 1740-41.) Petitioner critiqued the motion court for finding that Ms. Gause's affidavit largely mimicked her previous statement because he argues that Ms. "Gause's statement made new sworn allegation of fact." (Dkt. No. 20 at 5-6.) However, Respondent also argues—somewhat contradictorily—that Ms. Gause's affidavit "was largely in conformance with the basics of what [trial counsel] testified to at the *Lombardo* inquiries regarding i.e., the trip to the police station, the reach out years later by a prosecutor regarding locating her for a retrial, [trial counsel's] representation of Gause's fiancée and their prior contacts." (*Id*. at 6.) Moreover, the motion

court reasonably found unpersuasive Petitioner's explanation for not seeking an affidavit or affirmation from trial counsel. (*Id.*)

For each of these reasons, I recommend that Ground 1 be denied.

**B. Ground 2**

After carefully considering the matter, I recommend that Petitioner's claim regarding the prosecution's failure to provide *Brady* and *Giglio* materials[3] that were in its constructive possession (Ground 2) be denied.

With respect to the People's alleged failure to disclose the details of Ms. Gause's grand jury testimony and a transcript of that testimony, Petitioner's claim is procedurally barred. The motion court held that the prosecutor's *Brady* disclosure that Ms. Gause had testified falsely before the grand jury "alerted" Petitioner so he could have presented these claims before the verdict or sentencing. (SR. at 1744.) Hence, the motion court appropriately rejected Petitioner's claims regarding Ms. Gause's grand jury appearance as procedurally barred pursuant to N.Y. Crim. Proc. Law § 440.10(3)(a), which is an independent and adequate state procedural rule precluding habeas relief.

[3] As set forth above, Petitioner identifies six categories of materials that the People purportedly failed to turn over: (1) "oral details and specifics of [Ms.] Gause's testimony before the Rensselaer County grand jury"; (2) a transcript of Ms. Gause's grand jury testimony; (3) a statement of February 19, 2004, from Ms. Gause, admitting to selling a gun to the individuals who killed a police informant and lying to the police; (4) an Investigative Report of February 12, 2004, indicating that Ms. Gause lied when she denied recognizing the individuals who killed the police informant; (5) the reason for the non-prosecution of Ms. Gause for possession and selling the gun and for the perjury before the grand jury; and (6) Ms. Gause's "complete criminal history and information on her prior bad acts," which the motion court presumed to be a reference to Petitioner's claim that Ms. Gause had previously been issued a citation for public urination that was not recorded on her criminal history and engaged in various other criminal acts that were not charged. (Dkt. No. 1 at 17-18.)

Further, the motion court found that all of Petitioner's *Brady* claims lacked merit. Given the appropriate deference under the AEDPA, the undersigned agrees that the motion court's rejection of Petitioner's claim regarding Ground 2 was reasonable.

More specifically, with respect to (1) the 2004 grand jury details, (2) the 2004 grand jury testimony, (3) the investigative report of February 12, 2004, (4) the police narrative of February 19, 2004, and (5) Ms. Gause's complete criminal history report, the motion court held that—among other things—there was no reasonable probability that the outcome of the trial would have been different if those materials had been disclosed. (SR. 1744-46.) This conclusion was not unreasonable.

As the Supreme Court recently explained "even if undisclosed evidence entirely discredits a prosecution witness, the failure to turn over the evidence is not material if considerable other evidence links the [petitioner] to the crime and the record provides strong support that the [petitioner] would have been convicted anyway." *See Klein v. Martin*, 607 U.S. 213, 222 (2026) (internal quotation marks, citations and modifications omitted); *but see United States v. Avellino*, 136 F.3d 249, 256-57 (2d Cir. 1998) (explaining that "evidence whose function is impeachment may be considered to be material where the witness in question supplied the only evidence linking the [petitioner] to the crime.") (citing cases).

At trial, the jury heard testimony from Derrick Brown, who testified that from April 30, 2014, until Dember 4, 2014, he sold cocaine to Petitioner on numerous occasions. (Dkt. No. 13, Attach. 6 at 122-34, 136-37.) Mr. Brown testified that Petitioner would drive to the New York City area in a beige vehicle to purchase cocaine and Mr. Brown would place the cocaine in a secret compartment of the vehicle. (*Id*. at 134-35.) Further, the jury heard testimony from Marklen Hay, who is Petitioner's cousin and was involved in the drug sale organization. (Dkt.

No. 13, Attach. 7 at 35-48.) Mr. Hay testified that he met Ms. Gause through Petitioner and from April 30, 2014, through December 4, 2014, Mr. Hay sold Ms. Gause crack cocaine. (*Id*. at 35, 85.) Mr. Hay testified that Petitioner called him and asked if he "wanted a sale where" Mr. Hay would be paid $50 per gram of cocaine. (*Id*. at 81, 84.)

Ms. Gause testified that between April 30, 2014, and December 4, 2014, she sold crack cocaine that she received from Petitioner and Mr. Hay. (Dkt. No. 13, Attach. 7 at 121-22.) Ms. Gause testified regarding numerous phone calls between she and Petitioner whereby they spoke in coded language to discuss the drug sales. (*Id*. at 124-28.)

Kandis Hill testified that a mutual friend connected her with Petitioner. (Dkt. No. 13, Attach. 8 at 3.) Ms. Hill testified that she and Petitioner entered an agreement whereby Petitioner paid for the registration and insurance for one year on Ms. Hill's vehicle and Ms. Hill registered Petitioner's car under her name. (*Id*. at 3-4.) In addition, Ms. Hill testified that on occasion, she and Petitioner switched cars such that Petitioner drove Ms. Hill's vehicle and Ms. Hill drove Petitioner's vehicle. (*Id.* at 6-10.) Ms. Hill testified that each time she and Petitioner switched vehicles, Petitioner paid her approximately $200. (*Id*. at 6-10.)

Kyle LaFountain testified that between April 30, 2014, and December 4, 2014, he purchased crack cocaine from Petitioner. (Dkt. No. 13, Attach. 8 at 27-28.)

Finally, Petitioner testified that between April 30, 2014, and December 2014, he participated in a major drug-running conspiracy with Mr. Brown and Ms. Gause but that he sold marijuana, not cocaine. (Dkt. No. 13, Attach. 8 at 88-104.)

The evidence against Petitioner was compelling. The state court reasonably held that additional impeachment evidence for use undermining the testimony of Ms. Gause would not have had a reasonable probability of affecting the verdict. (SR. 1744-46.) Further, the Second

Circuit has held that "new impeachment evidence is *not* material [for *Brady* purposes], and thus a new trial is *not* required 'when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (quoting *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (emphasis in original)).

With respect to the reason for Ms. Gause's non-prosecution, the state court reasonably held that the People's disclosure of Ms. Gause's criminal history report was sufficient to meet their *Brady* obligations. (*Id*. at 1745.)

Moreover, Petitioner argues that the prosecutor committed a *Brady* violation in not correcting Ms. Gause's allegedly false testimony. (Dkt. No. 20 at 16.) First, as set forth above, the evidence against Petitioner at trial was compelling and additional impeachment of Ms. Gause would not have had a reasonable probability of affecting the verdict. Second, Petitioner fails to present evident—other than his own speculation—that the People knew Ms. Gause was testifying falsely and therefore, that the prosecutor had an obligation to correct the record.

More specifically, Ms. Gause was asked the following questions and gave the following answers:

> Q: Besides that [referring to her involvement with the drug conspiracy] have you ever been involved in the legal system in other ways?
>
> A: No.

(Dkt. No. 13, Attach. 7 at 137-38.)

> Q: By the way, the part about cooperating didn't come in after you pled guilty. The part about cooperating was before you pled guilty. You had to agree to cooperate just to get no more than nine-years, right?
>
> A: Yeah. I never been in trouble; I don't know.

(Dkt. No. 13, Attach. 7 at 161.) Based on Ms. Gause's criminal history report and Petitioner's account of Ms. Gause's criminal history, Ms. Gause was allegedly cited for public urination in 2002. As the motion court concluded, Petitioner failed to present evidence that the People were aware of Petitioner's public urination citation. (SR. at 1745-46.) Hence, the prosecutor could not correct information that he was not aware of.[4]

Finally, Ms. Gause was asked the following question and provided the following answer:

> Q: How long had you been employing your daughter to assist you in your operation before April of 2014?
>
> A: Well, before April 20, 2014, I was not selling drugs.

(Dkt. No. 13, Attach. 7 at 155.) As the motion court held, Petitioner fails to present evidence that (1) Ms. Gause sold drugs before April 20, 2014, or (2) the People were aware of Ms. Gause selling drugs before April 20, 2014. (SR. at 1746.)

In sum, the "undisclosed impeachment evidence [about Ms. Gause's history of dishonesty and prior bad acts] is not material in the *Brady* sense [because], although possibly useful to [Petitioner's] defense, it [wa]s not likely to have changed the verdict." *Carter v. Ercole*, 338 F. App'x 43, 45 (2d Cir. 2009) (internal modifications and quotation marks omitted) (citing cases).

For each of these reasons, I recommend that Ground 2 be denied.

---

[4] Furthermore, even assuming that Ms. Gause was cited for public urination, the undersigned does not deem Ms. Gause's testimony as inaccurate when it is viewed in an appropriate context. A citation is generally handled with a ticket and a fine, much like a traffic infraction. A reasonable person may not consider such a trivial interaction with the justice system memorable. In addition, a reasonable person may not consider a citation as "involvement with the legal system" particularly when the frame of reference for the question was the 75-count drug conspiracy indictment that Ms. Gause was a part of.

**C. Ground 3**

After carefully considering the matter, I recommend that Petitioner's claim regarding the trial court's alleged *Brady* violation (Ground 3) be denied for the reasons set forth in Respondent's memorandum of law arguing that the claim is meritless.[5] (Dkt. No. 14, Attach. 1 at 40-43.)

This Court may only grant relief if the state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Here, the Supreme Court has not reached the issue of whether a federal statute or the Due Process Clause place an affirmative duty on the court to inform criminal defense counsel that impeachment material existed and was suppressed or order the prosecution to produce the material.

Further, the motion court reasonably concluded that Petitioner failed to prove either that the trial judge possessed relevant extrajudicial information or that disclosure of that information would have had an effect on the trial. (SR. at 1746-48.) More specifically, the trial judge submitted a letter recusing itself from ruling on Petitioner's motion pursuant to Crim. Proc. Law. § 440 and in the letter, denied that he had "made the connection" between Ms. Gause—in this

[5] In making this recommendation, the undersigned rejected Respondent's assertion that Petitioner "did not seek leave to review the instant claim" in his motion for leave to appeal. (Dkt. No. 14, Attach. 1 at 39-40.) As set forth by Petitioner, his leave application identified the "Appearance of Impropriety" as his POINT III and he presented the factual and legal premises behind the federal claim he is now raising. (Dkt. No. 20 at 18.) More specifically, Petitioner cited to *Brady* and *Liljeberg v. Health Acquisition Servs. Corp.*, 486 U.S. 847, 852 (1988) (quoting *Health Acquisition Servs. Corp. v. Liljeberg*, 796 F.2d 796, 803 (1986)). (SR. 1769.) In addition, Petitioner's motion pursuant to N.Y. Crim. Proc. Law § 440.10 stated that Petitioner's "14th Amendment . . . right to fundamental fairness, a fair trial and due process of law was impaired by County Court's . . . failure to make a record about its conflict relating to the main witness against [Petitioner]." (Dkt. No. 2, Attach. 2 at 53.)

action—and Ms. Gause as a potential witness related to his representation of Mr. Booker in the 2004 murder trial approximately ten years before. (SR. at 1746.)

For each of these reasons, I recommend that Ground 3 be denied.

## V. CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[6] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

---

[6] A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**RECOMMENDED** that the Petition (Dkt. No. 1) be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: August 12, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge